## METROPOLITAN RAILROAD COMPANY *vs.* QUINCY RAILROAD COMPANY.

One street railway corporation has no right to use the tracks of another such corporation for the transportation of passengers in cars, without the authority of such second corporation or of the legislature.

If one street railway corporation, being duly authorized by law, has entered upon and used the tracks of another such corporation, commissioners appointed under *St.* 1864, *c.* 229, to determine the rate of compensation to be paid therefor, to fix the manner and stated period of such use, and the mode of connection of the tracks, may prescribe a rate of compensation founded upon the amount of business of the first corporation over the tracks of the second corporation, and may require accounts to be so kept as to exhibit the amount of such business, which accounts shall be open to the inspection of the second corporation.

An award of such commissioners will not be invalid by reason of its omission to require the railway corporation whose tracks are entered upon to keep them in repair, that duty being imposed by statute.

PETITION filed June 21st 1864, setting forth that the petitioners are the owners of a street railway heretofore known as the Dorchester Avenue Railroad; that the Quincy Railroad Company, another street railway corporation, have been authorized by law to enter upon and travel over with their cars and vehicles certain tracks of said railroad, upon terms to be agreed upon in writing by said companies; and in case of disagreement as to the mode of connection, or the manner, time and extent of the use of said railroad, and the compensation to be paid therefor, the same to be adjusted and determined by three commissioners to be appointed by this court; that the Quincy Railroad Company, without making any such agreement, have entered upon and used the tracks of the petitioners, and the parties have failed to agree upon said terms; wherefore the petitioners prayed for the appointment of three commissioners to adjust and determine the same.

After due notice, James D. Colt, Henry W. Paine and William A. Richardson, Esquires, were appointed as such commissioners and, after hearing the parties, they made a report, of which the material portions were as follows:

" It was claimed in the outset by the Metropolitan Company

that the Quincy, under the provisions of its charter, had no right to enter upon the track of the Metropolitan, and pass over it with its cars, horses, drivers and conductors, and that by its charter the cars only of the Quincy were permitted to enter upon and pass over its road. We are of opinion that, upon a true construction of the charters, and under the petitions and proceedings in this case, the claim of the Metropolitan is not well founded; and this award is accordingly based on the assumption that there is no legal objection in allowing the Quincy to enter upon and pass over the Metropolitan track with cars, horses, drivers and conductors. We submit this question to the court for revision.

" The Quincy Corporation is the owner of a road extending from a point on the Metropolitan line, known as Field's Corner, to the town of Quincy, a distance of five and sixty-nine one-hundredths miles. It was chartered and constructed after the line from Field's Corner to State Street, Boston, a distance of four and twenty one-hundredths miles, was chartered and built. Thus located, a continuous line of road from Quincy to Boston is established. The charter of the Quincy was granted, as it seems to us, to enable it to transport passengers from points on its own line to Boston as its principal business; but such is the nature of the business of street railroads, that the convenience of the public requires that the cars of the Quincy, in their transit over the Metropolitan, should take up those designing to pass only between points on that line; and we think that the Quincy should take up and receive toll from such passengers.

" The grant of the franchise to the Metropolitan to locate and construct its road, and take toll from passengers upon it, with the obligation which as passenger carriers it is obliged to assume, entitles the Metropolitan to the exclusive use of its tracks, and to the tolls from passengers taken up and set down on its line, in the absence of any legislative interference ; and if another road is authorized by charter to enter upon and take toll from such passengers, with a provision for compensation, we understand it to mean compensation based upon these views of the rights of the parties.

" We are of opinion that the interests of both roads and the

public require that the cars of the Quincy, with its own horses, drivers and conductors, should pass over the Metropolitan line, taking up and receiving tolls from all passengers, without reference to their destination; and that the Quincy, in such use of the Metropolitan track, should conform to the rules and regulations adopted by the last named company for the regulation of its own cars and employés; and that each company should conduct business in the enjoyment of its rights, so as to interfere as little as possible with the business of the other; and we accordingly so award.

" In the matter of the compensation to be allowed the Metropolitan for such use, we think, as a general rule, the gross receipts of the company entering upon and using the tracks of another, from passengers carried over the whole or part of both roads, should be divided so as to give to each the reasonable profits from such passengers, so far as they may be carried on or rightly belong to the business of their respective roads, having regard to the capital and work contributed by each in the transportation; and that from the gross receipts from passengers carried wholly on the road entered upon, only the cost of transportation should be allowed to the entering road.

" We have aimed, as far as the data furnished will enable, to give a rule by which the amount of compensation will depend upon the amount of business done, so that each company will be interested in the fare received from every passenger carried by the Quincy, union of interest to some extent created, competition removed, and the legitimate profits of the business for which each is incorporated will be received by each.

" We award and direct that, at the end of each month, the Quincy Company shall furnish the Metropolitan a statement in writing, which shall truly exhibit,

" First. The amount of money received each day in the month, in cash fares and tickets taken up, between the severa. stations on each road and Boston, and the number of such passengers.

" Secondly. The amount of money received each day in cash fares, and tickets taken up from " way passengers; " that is to

say, from passengers between any point on the Metropolitan, other than Boston, and any point on the Quincy.

" Thirdly. The rates of cash fare and tickets sold.

" In applying the rule of compensation herein given, each passenger shall be deemed to have travelled the whole distance on each road which the ticket or fare paid would have entitled him to.

" The receipts from passengers to and from Boston, and any point on the Quincy road, other than Mill Street, together with one half of the receipts from passengers between Mill Street and Boston, shall be divided in the proportion of five and sixty-nine one-hundredths to four and twenty one-hundredths; and the proportion of four and twenty one-hundredths thereof, together with the receipts from passengers to and from Boston and any other point on the Metropolitan line, and one half the receipts from passengers between Mill Street and Boston, and also one half the receipts from " way passengers," as above defined, shall be so divided as to leave to the Quincy Company seventy-seven and one half per cent. of the amount thereof; and the Quincy Company shall pay to the Metropolitan Company twenty-two and one half per cent. of the same in full, for the use of its track and such station accommodations as may be furnished by the Metropolitan for the use of its passengers.

" No passengers shall be transported over the Metropolitan line by the Quincy Company at rates of fare lower than those charged by the Metropolitan.

" Each company shall receive from passengers the tickets issued by the other company, in like manner as if issued by itself; and shall redeem, at the price for which they were sold, all tickets issued by itself and taken for fares by the other company, and shall pay such company therefor in cash, or receive the same in set-off at each settlement between them.

" The accounts of the Quincy Company relating to the receipts from and transportation of passengers, and the conductors' returns, shall be open to examination by the officers of the Metropolitan Company on request.

" For any misconduct of any employé of either company

injurious to the other, the superintendent of the company injured shall notify the superintendent of the other thereof in writing specifying the time and particulars of such misconduct; and if any misconduct injurious to the same company shall be again repeated by the same employé, and notice thereof given as aforesaid, he shall be discharged, and not employed again without the consent of the superintendent of the injured company.

" We believe there can be no difficulty in applying the rule of compensation above given to the past business of the two roads; and we therefore further award that compensation for the past use of the Metropolitan road by the Quincy Company, commencing October 1st, 1863, shall be made according to the rule above given; and that statements, as above provided, of receipts for the past, commencing at the last named date, shall be rendered by the Quincy Company as soon as may be, not exceeding ten days after the approval of this award, to the Metropolitan, and payment made the last named company according to the rules herein given, with interest from the times when the several monthly payments would be due; the books and accounts of the Quincy being open to examination for the past, as above provided. If, in the opinion of the parties or of the court, there should be any practical difficulty in arriving at the amount of compensation for the past, by the rules here given, or any legal objection to this part of the award, the commissioners vill take such further action as may be required to ascertain more definitely the amount of compensation to be paid for such past use."

The respondents objected to the acceptance of this report on the following grounds:

" 1. Said commissioners decide that the franchise granted to the Metropolitan Railroad Company, to locate and construct its road, and take toll from passengers upon it, with the obligation which as passenger carriers it is obliged to assume, entitles the Metropolitan to the exclusive use of its tracks and to tolls from passengers taken up and set down on its line, in the absence of egislative interference.

" 2. Said commissioners decide that tl e gross receipts of the

company entering upon and using the tracks of another, from passengers carried over the whole or part of both, should be divided so as to give to each the reasonable profits from such passengers, so far as they may be carried on or rightly belong to the business of their respective roads, having regard to the capital and work contributed by each in the transportation; and that from the gross receipts from passengers carried wholly on the road entered upon, only the cost of transportation should be allowed to the entering road.

" 3. Said commissioners decide that each company shall be interested in the fare received from every passenger carried by the Quincy Railroad Company; and said commissioners attempt to create a union of interests, while they are, only authorized to determine the rate of compensation for the entry upon and use of tracks.

" 4. Said commissioners award that the compensation is to depend upon the amount of business done, and is not a compensation for a use of property, as the statute provides.

" 5. Said commissioners award that the Quincy Railroad Company shall make statements of its business to the Metropolitan Railroad Company.

" 6. Said commissioners award that said Quincy Railroad Company shall keep accounts which it will be impracticable for them to keep, and shall exhibit an account of all their receipts and returns to the officers of the Metropolitan Railroad Com pany.

" 7. The commissioners have laid down a rule by which the amount of compensation is to depend on the amount of business done, and which does not give a compensation for the use of a track or other property.

" 8. There is no provision requiring the Metropolitan Railroad Company to keep their track in repair or in proper condition for use, or making the compensation in any way dependent on the condition of the track or the value thereof.

" 9. The Quincy Railroad Company is required to divide its gross receipts during the entire year, although during a part of the year the track may not be used at all on account of snow,

and during the past year the track of the Metropolitan Railroad Company has not been used for several weeks by the respondents."

The case was thereupon reserved, by *Hoar*, J., for the determination of the whole court.

*P. W. Chandler & G. O. Shattuck*, for the respondents. The petitioners by their charter have no right to tolls from passengers not carried in their cars. They accepted the grant, thus limited in terms. It is plain that a street railway company would have no right to exact tolls from persons who drive their private teams upon its tracks. And there is no statute which expressly or by implication gives any better right to tolls from passengers carried in the cars of another company. The questions involved are of vast importance to all the street railways in this vicinity. The petitioners have purchased several roads. All the other companies must pay tribute to them, if the principles of this report are established. A railroad, for example, from Quincy to Field's Corner alone cannot pay its expenses. This consideration is important, as throwing light on the intention of the legislature, in granting the charter to the petitioners. It was never intended to grant such privileges as are now claimed. The only idea then was, that others who used the tracks should pay a portion of the expense of keeping them in repair. And the commissioners in fixing upon the principle of compensation have in our judgment made an enormous mistake. The principle here adopted cannot as a general principle be carried out. There is a perfect network of tracks here in Boston. One car will run over the tracks of several companies. How shall the division be made?

The franchise of a street railway company is essentially different from that of a steam railroad company. See Gen. Sts. *c.* 63, § 139; *Commonwealth* v. *Temple*, 14 Gray, 77; *Davis* v. *Mayor, &c. of New York*, 14 N. Y. 517. A steam railroad company cannot lay its tracks in a street without compensation to the owner of the fee. *Springfield* v. *Connecticut River Railroad*, 4 Cush. 63. *Williams* v. *New York Central Railroad* 16 N. Y. 97. With a street railway company it is otherwise

*Brooklyn, &c. Railroad* v. *Brooklyn City Railroad*, 33 Barb. 420.

The provision by which the respondents are only to be allowed the cost of transportation for passengers carried wholly on the petitioners' road is unjust. Ample compensation would be afforded by a provision for compensation simply for the use of the tracks. The chief injury to street railway tracks is caused by ordinary vehicles running against and across them. The award of the commissioners creates a partnership between the two corporations.

The respondents under their charter cannot be compelled to exhibit their books to the petitioners, and the commissioners had no authority to order this.

*E. H. Derby*, for the petitioners.

GRAY, J.* A brief general consideration of the nature of the rights acquired by a street railway corporation under a charter from the legislature, and of the extent of the powers of commissioners appointed under the *St.* of 1864, *c.* 229, § 29, when one such corporation enters upon or uses the tracks of another, will go far towards disposing of the respondents' exceptions to this award.

The charter of a street railway corporation is the grant of a franchise to lay iron rails on part of the public highways, to run horses and cars thereon for the transportation of passengers, and to receive fares for such transportation, in consideration of the benefit to the public resulting from the establishment of such means of travel, and in compensation for the expenses ncurred by the grantees in laying their rails and running their cars. Although such a grant does not deprive ordinary travellers of the right to pass over the whole highway, including that part on which the rails are laid, so long as they do not unreasonably interfere with the passage of such cars; it is clearly inconsistent with the use of the tracks by other similar corporations for the running of vehicles of the same kind for the transportation of passengers for hire, without like authority

---

* COLT, J. did not sit in this case.

from the legislature; for the grant of such a franchise would be of no benefit to the grantees, if it merely authorized them to incur the expense of laying rails adapted to the drawing of passenger cars, upon which, when laid, all other corporations, without compensation or reimbursement to them, would have equal rights to run similar cars and to receive like fares. *Common-wealth* v. *Temple*, 14 Gray, 74–77. *St.* 1864, *c.* 229, §§ 22, 23, 26, 33. 1 Redfield on Railways, (3d ed.) 319, 320, 322. The legislature indeed reserves to itself the right to repeal or modify the charter, and to the municipal authorities the power of fixing, changing and discontinuing the location of the tracks and of regulating their use. Gen. Sts. *c.* 68, § 41. *St.* 1864, *c.* 229, §§ 14–20, 31, 34.

Such was the nature of the franchise granted by the *St.* of 1854, *c.* 435, and the acts in addition thereto, to the Dorchester Avenue Railroad Company, and now owned by the Metropolitan Railroad Company. The Quincy Railroad Company are authorized by their charter " to enter upon and travel over with their cars and vehicles the tracks of said Dorchester Avenue Railroad," in a manner and upon terms to be fixed by commissioners appointed by this court, if the parties do not agree; and are made " subject to all general laws which have been or may hereafter be enacted relating to horse railroads." *St.* 1861, *c.* 48, §§ 3, 6.

The general act of 1864, concerning such companies, provides that whenever any street railway corporation, duly authorized by law, enters upon and uses the " tracks, or any portion thereof, of another such corporation, and the corporations cannot agree upon the manner and conditions of such entry and use, or the compensation to be paid therefor, the supreme judicial court, upon the petition of either party and notice to the other, shall appoint three commissioners, who, after due notice to and hearing of the parties interested, shall determine the rate of compensation to be paid for future use, and if desired by either party, for past use, or fix the manner and stated periods of such use, or the mode of connection of the tracks, having reference to the convenience and interest of the corporations, and of the public to be accommodated thereby; " and their award, being

returned to and approved by the court, shall be binding for one year and until revised in the same manner.

By this statute the rate of compensation to be paid by one corporation for the use of the tracks of the other is submitted in the broadest and most general terms to the determination of the commissioners. The weight to be allowed to the extent of the franchise granted in either charter, to the expenses incurred by each corporation, the amount of business done upon each of the connecting roads, and all other circumstances bearing upon the question, is left entirely to their discretion.

The compensation which each corporation would in fact have received for their outlay and expenditures, in case no other corporation had entered upon their tracks, would have been the amount of the fares of all passengers transported in cars over those tracks. In the award made in this case, the commissioners, exercising the discretionary powers intrusted to them by the statute, appear to have been much influenced by this ; and have determined that the suitable compensation to be paid to the Metropolitan Railroad Company for the use of their tracks by the Quincy Railroad Company is that portion of the profits from passengers carried over ·the whole or part of both roads, which is derived from carrying them on the road of the Metropolitan Railroad Company, or rightly belongs to the business of that road, having regard to the capital and work contributed by each company in the transportation ; and also the entire receipts from passengers carried wholly on that road, allowing to the Quincy Railroad Company only the cost of transportation, which must of course be held to include an allowance for the interest on the capital invested in the horses and cars used by that corporation in such transportation of passengers. There is nothing in the facts of this case, as presented to the court, to show that this mode of estimating the compensation was unreasonable or beyond the authority of the commissioners. The question whether any other rate of compensation would have been more just and equitable was a question to be decided by the commissioners, and not by the court. The court must presume that the reasons in favor of a different mode of computation

from that adopted in the award were presented to the commissioners and duly considered by them.

With these general views of the nature of the questions to be decided by the court, we now come to the examination of the particular exceptions of the respondents.

The first exception is based upon the assumption that the corporation whose tracks are entered upon have no peculiar right to transport passengers in cars over their own road; an assumption which, as already stated, is inconsistent with the nature of the franchise granted by the legislature.

The ground alleged for the second, fourth and seventh exceptions is that the commissioners have been guided, in estimating the compensation, by the amount of business done by the respondents upon the petitioners' road. This was within the authority given to the commissioners by the statute.

The third exception is groundless. There is nothing in the award which recognizes any interest of the petitioners in any passengers not carried over their own road, or which creates a partnership between the two corporations. The " union of interest," which the commissioners declare it to be their object to create, is carefully limited by the words " to some extent," and explained by the other objects stated, of removing competition, and giving to each corporation the legitimate profits of the business to do which they were incorporated. The commissioners in this have done no more than follow that clause of the statute which directs them to " have reference to the convenience and interest of the corporations."

The statements and accounts required to be made and exhibited by the respondents to the petitioners, which are the subjects of the fifth and sixth exceptions, are no more than reasonable means to secure the payment of the compensation at the rate fixed by the commissioners. There is nothing in the case to show that it is impracticable or difficult to keep or render such accounts.

The obligation of each corporation to keep their tracks in repair is fixed by statute, and need not be expressed in the award. *St.* 1864, *c.* 229, § 18. The allowance, if any, to be

made for the fact that the tracks were not used during part of · the winter was to be, and doubtless was, considered by the commissioners. The eighth and ninth exceptions cannot therefore be sustained.

This disposes of all the exceptions taken by the respondents to this award. It may be added that many of them are very similar to exceptions which have been heretofore taken to like awards between ordinary railroad corporations, under the *Sts.* of 1845, *c.* 191, and 1857, *c.* 291, and overruled by this court, upon reasons which apply with equal force to this case. *Boston & Worcester Railroad* v. *Western Railroad,* 14 Gray, 253. *Lexington & West Cambridge Railroad* v. *Fitchburg Railroad,* Ib. 266.

*Award accepted and judgment thereon.*